FILED

2026 Aug-05  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| ERICA D. CROFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-1270-GMB |
| | ) | |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On September 3, 2021, Plaintiff Erica D. Croft filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and supplemental security income ("SSI") under Title XVI of the Act. In both applications, the alleged disability began on March 3, 2020. Both applications were denied at the initial administrative level and upon reconsideration. Thereafter, Croft requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephone hearing on April 16, 2024, and denied Croft's claims on July 17, 2024. Croft requested a review of the ALJ's decision by the Appeals Council and submitted additional evidence in support of this request. The Appeals Council declined review on June 3, 2025. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of June 3, 2025.

Croft's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 13.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Croft bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm., Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

4

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Croft was 31 years old on the alleged disability onset date. R. 24, 126.  In her disability report, she identified the following medical conditions: arthritis, diabetes, high blood pressure, irregular heartbeat, and thyroid disease. R. 320.  She has a high school education and past relevant work experience as a caregiver. R. 320.  During the claims period, Croft was 5'7" tall, weighed approximately 350 pounds, and lived by herself. R. 56.

At the hearing, Croft testified about her limitations and daily activities.  She said the main reasons she could not work full-time were her ankle pain, headaches, swelling in her legs and feet, and pain in her back and knees. R. 60–61.  And she reported that she has trouble performing her work because of her back impairment and blackouts. R. 59.

5

Croft testified that she sees a pain management specialist for migraine headaches and her back, knee, and ankle pain. R. 60. She has headaches every other day and manages them by staying in bed all day and taking her prescribed medication, Qulipta, which she does not find helpful. R. 60. Croft also testified that her right ankle continues to swell despite a surgical repair after she fractured it in August 2022. R. 58 & 67. Croft experiences swelling in her legs and feet, which her physician suspects is related to the functioning of her thyroid. R. 61. To alleviate the swelling, she props her feet on pillows for half of the day and takes diuretics, causing her to urinate every 20 minutes. R. 61.

In addition to these symptoms, Croft testified that her diabetes medication causes diarrhea twice daily and her pain medication causes drowsiness. R. 61–62. Croft sleeps approximately four to five hours between 8:00 a.m. and 5:00 p.m., and she cannot lift a ten-pound bag of potatoes due to her back pain. R. 62. She has not driven a car since an accident in 2019, so she relies on her mother and sister for transportation. R. 57 & 63. She testified that she cannot sit for more than 20 minutes without swelling and has difficulty standing in one place for extended periods of time, preventing her from visiting the grocery store or cleaning her apartment. R. 62–64. Croft can dress herself while sitting, cook a simple meal, and attend to her own bathing and hygiene without assistance. R. 63–64.

In support of her application, Croft submitted medical evidence from various

sources.  Relevant here, the medical evidence establishes Croft's history of ongoing treatment for Type 2 diabetes mellitus and edema of lower extremities during the relevant period.  Croft's primary care provider prescribed medications to manage her blood sugar levels, and the medical records describe her diabetes as "controlled." R. 568, 575, 580, 588, 594, 646, 653, 658, 666, 672.  In July 2022, she had 2+ pitting edema in her legs and ankles but maintained a normal gait. R. 566.  She was prescribed Lasix and compression hose and instructed to restrict her fluid intake and elevate her legs while sitting. R. 644.

In late July 2022, Croft fractured her right ankle and underwent an open reduction and internal fixation. R. 738.  Post-operative x-rays showed that the hardware was in excellent position. R. 738.  In March 2023, there was no edema noted at Croft's cardiology visit. R. 1115.  On October 18, 2023, a diabetic foot examination indicated +1 dorsalis pedis, ankle and leg edema, and hammertoes bilaterally, although sensation was grossly intact. R. 976.  By April 2024, there was again no edema noted. R. 1112.

The medical evidence also reflects Croft's history of receiving treatment for migraine headaches. In May[1] 2022, she reported that her migraine headaches were becoming worse and she was doubling her medication dosage for pain relief even

---

[1] The ALJ stated that Croft's complaint about worsening migraine headaches occurred during her July 2022 visit. R. 19.  However, the medical records show that this complaint came in a May 2022 visit. *Compare* R. 564-67, *with* R. 568-573.  This error does not affect the court's analysis.

though her cranial nerves were grossly intact and her extraocular eye movements and gait were normal. R. 568, 571.  Croft also reported headaches to her pain management specialist from September 2021 to January 2024. R. 516–62, 902–40, 989–1025.

Additionally, the record reflects Croft's history of morbid obesity.  For instance, in February 2020, Croft's body mass index ("BMI") was 56.69 kg/m$^2$. R. 616.  She received counseling on dietary restrictions and exercise, and in 2023 received a prescription medication for weight loss. R. 620.  Records show some weight reduction in March and September 2023, followed by an increase in February 2024, when her BMI reached 58.13 kg/m$^2$. R. 1047, 1061, 1075.

The ALJ issued his decision on July 17, 2024. R. 8.  Under step one of the five-step evaluation, he found that Croft met the insured status requirements through December 31, 2025, and had not engaged in substantial gainful activity since her alleged onset date of March 3, 2020. R. 14.  The ALJ concluded that Croft suffers from the severe impairment of morbid obesity due to excess calories, edema of lower extremities, diabetes mellitus, and migraine headaches.[2] R. 14.  The ALJ noted that these medically determinable impairments significantly limit Croft's ability to

---

[2] The ALJ also confirmed Croft suffered from essential hypertension, hyperlipidemia, hypothyroidism, degenerative disc disease, degenerative joint disease of the knees, right ankle fracture, sleep-related breathing disorder, hammertoes (bilateral), tachycardia, chronic kidney disease, and cholelithiasis. R. 14.  The ALJ categorized these impairments as non-severe. R. 14-17.  Croft does not challenge this finding.

8

perform basic work activities. R. 14. Nonetheless, he concluded at step three that none of Croft's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 17.

Before proceeding to the fourth step, the ALJ determined that Croft had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). More specifically,

> she can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can occasionally be exposed to extreme cold or extreme heat. She cannot be exposed to excessive vibration. She can never be exposed to workplace hazards, such as moving mechanical parts and high, exposed places.

R. 17. At the fourth step, the ALJ considered Croft's age, education, work experience, and RFC in determining that she was incapable of performing her past relevant work as a caregiver. R. 24. However, the ALJ determined that there are other jobs existing in the national economy that Croft could perform, including work as a parking lot attendant, marker, or routing clerk. R. 25. Therefore, the ALJ concluded that Croft was not disabled within the meaning of the Social Security Act from March 3, 2020, through the date of the decision. R. 25. Based on these findings, the ALJ denied Croft's application for benefits. R. 25–26.

Following the ALJ's decision, Croft sought review before the Appeals Council and submitted additional evidence, including (1) ongoing treatment records and (2) a medical evaluation, physical capacities form, and mental health source

9

statement from Dr. Pascual Herrera, an internist. R. 2, 70–91, 92–100. The treatment records—dated from July 23, 2024 to September 24, 2024—reflect treatment for Croft's complaints of pain in her lower back, left knee, and right ankle. R. 70–84. The records from Dr. Herrerra relate to an examination on November 14, 2024. R. 94. Dr. Herrera noted Croft's obesity and, upon examination, found that she had 3/5 grip strength bilaterally, tenderness to palpation of the lumbar region, intact motor activity, and limped without assistance. R 93.  Examinations of her neck, lungs, abdominal, cardiac, and skin revealed no significant abnormalities. R. 93.

Dr. Herrerra also completed a physical capacities form on November 14, 2024. R. 96.  Most of the form required him to answer a series of questions by checking or circling pre-printed answers and filling in blanks. R. 96.  For instance, when asked how much weight Croft could lift, Dr. Herrerra checked "occasionally" for up to 25 pounds and "never" for anything over 26 pounds. R. 96.  Similarly, Dr. Herrerra checked that Croft could "occasionally" reach and handle with her hands and "frequently" could finger and feel. R. 96.  He circled "2 hours" when asked how much time he would expect Croft to be "lying down, sleeping, or sitting with legs propped at waist level or above, due to her medical condition" in an eight-hour workday. R. 96.  He responded that she would need four restroom breaks lasting between five and ten minutes in an eight-hour period. R. 96.  Dr. Herrerra also stated that, in addition to normal workday breaks, Croft would be expected to be off-task

10

35% of the time in an eight-hour day and would expect to miss 23 days of work in a 30-day period due to her physical symptoms. R. 96.

When asked if these limitations existed back to March 3, 2020, Dr. Herrerra checked the box for "yes." R. 96. And when asked what conditions cause the limitations, Dr. Herrerra wrote: "morbid obesity/DM; Severe low back pain and bilat[eral] knees due to osteoarthritis/neuralgia; chronic venous insuff[iciency] in legs; traumatic arthritis; hardware R ankle." R. 96. He listed the side effects of her medication as "edema/psychosis/GI bleed/GERD." R. 96.

Along with the physical capacities form, Dr. Herrerra completed a mental health source statement. R. 97. The statement consists of the following questions, in response to which Dr. Herrerra circled either "yes" or "no":

1. Can Ms. Croft understand, remember or carry out very short and simple instructions?
2. Can Ms. Croft maintain attention, concentration and/or pace for periods of at least two hours?
3. Can Ms. Croft perform activities within a schedule and be punctual within customary tolerances?
4. Can Ms. Croft maintain an ordinary routine without special supervision?
5. Can Ms. Croft adjust to routine and infrequent work changes?
6. Can Ms. Croft interact with supervisors and/or coworkers?
7. Can Ms. Croft maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness?

R. 97. Dr. Herrerra responded "yes" to every question other than questions two, three, five, and seven. R. 97. Dr. Herrerra stated that, in addition to normal workday breaks, Croft would be expected to be off-task 50% of the time in an eight-hour day

11

and would be expected to miss 25 days of work during any 30-day period due to her psychological symptoms. R. 97.  He listed the side effects of Croft's medication as "edema/psychosis/GI bleed/GERD." R. 97.

The Appeals Council concluded that the additional evidence did not relate to the period at issue because the ALJ decided the case through July 17, 2024. R. 2. Accordingly, the Appeals Council denied Croft's request for review. R. 2.

## IV.  DISCUSSION

On appeal, Croft raises two arguments.  First, she claims that substantial evidence does not support the ALJ's RFC determination. Doc. 16 at 2.  More specifically, Croft contends that the ALJ (1) did not properly evaluate her obesity under Social Security Ruling ("SSR") 19-2p (Doc. 16 at 17–22); (2) did not consider sustained work activities in violation of SSR 96-8p (Doc. 16 at 22–23); (3) improperly assessed her diabetes as "controlled" (Doc. 16 at 23–24); and (4) improperly found that her ankle, leg, and back pain had been "resolved." Doc. 16 at 24–25.  Second, Croft argues that the Appeals Council erred in denying review after receiving new, chronologically relevant, and material evidence. Doc. 16 at 26–29.  The court addresses each argument below.

## A.    RFC Determination

An RFC determination is an assessment, based on all relevant evidence, of a claimant's ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d

1436, 1440 (11th Cir. 1997). The responsibility for making the RFC determination rests with the ALJ, not her doctors. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). "There is no rigid requirement that the ALJ specifically reference every piece of evidence so long as the ALJ's decision is not a broad rejection, *i.e.*, where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm., Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F. 3d 1206, 1211 (11th Cir. 2005)). For the following reasons, the court concludes that substantial evidence supports the RFC determination here.

### 1.    *SSR 19-2p*

Croft argues that the ALJ did not properly apply SSR 19-2p when determining her RFC. Specifically, she claims the ALJ failed to consider, assess, and explain the limiting effect of her obesity in combination with her other impairments. Doc. 16 at 17–22.

SSR 19-2p requires an ALJ "to consider the limiting effects of obesity when assessing a person's RFC." In doing so, the ALJ considers obesity in combination with all other impairments since it may increase the severity or functional limitations

of those impairments. *Id*.  An ALJ's improper evaluation of a claimant's obesity is reversible error. *Sharon D. v. Comm. of Soc. Sec.*, 2020 WL 13526738 (N.D. Ga. Jan. 14, 2020).  A finding of obesity is not tantamount to a finding of disability. *Jones v. Berryhill*, 2019 WL 922255, at *4 (S.D. Ga. Jan. 28, 2019), *adopted*, 2019 WL 919007 (S.D. Ga. Feb. 25, 2019).  For that reason, a claimant must present evidence that obesity impacts her ability to perform work in order to support a finding of disability. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). Notably, an ALJ's failure to cite SSR 19-2p is not grounds for reversal so long as the ALJ's reasoning demonstrates that the ALJ complied with SSR 19-2p's substantive requirements. *See Castel v. Comm. of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009).

Here, although the ALJ did not reference SSR 19-2p, he complied with its requirements in determining Croft's RFC.  First, the ALJ expressly considered Croft's obesity as a severe impairment; he noted her BMI in February 2020, the counseling she received, the weight loss medications prescribed to her in 2023, and the fluctuation of her BMI in 2023 and early 2024. R. 19.

The ALJ expressly found that "[c]onsidering the claimant's impairments, individually and in combination, in light of the objective findings, limitation to less than the full range of light work is warranted." R. 21.  In evaluating Croft's testimony that her pain and swelling prevent her from working or performing housework, the

14

ALJ recognized that Croft's complaints of pain could reasonably be related to her obesity even though the medical records show she walked unassisted at her primary care and pain management evaluations. R. 19.  He also noted "there is no evidence that her obesity causes any disabling limitations on its own." R. 19.

The ALJ also considered the effects of Croft's obesity in weighing the opinions of the medical sources in the record.  For example, he discounted the lesser restrictions opined by the non-examining state agency medical consultant based, in part, on Croft's obesity. R. 21.  He also found that Croft's obesity supported some of the limitations Dr. Hogan identified. R. 21–22.  And he found that the restrictions from Dr. Stephen Jones were not consistent with the February 2024 primary care records. R. 23.

Finally, in crafting Croft's RFC, the ALJ recognized the limitations due to her obesity in combination with her other impairments when he precluded her from climbing ladders, ropes, or scaffolds and found that she could occasionally climb ramps or stairs and occasionally balance, stoop, crouch, kneel or crawl. R. 21.  Courts within the Eleventh Circuit have concluded that similar findings satisfy the requirements of SSR 19-2p. *See Smith v. Kijakazi*, 2022 WL 3927818, at *10 (M.D. Ala. Aug. 31, 2022) (finding the ALJ considered claimant's obesity in combination with other impairments when she "precluded her from climbing ladders, ropes, or scaffolds and found that she could occasionally climb ramps or stairs and

15

occasionally balance, stoop, crouch, kneel or crawl"); *Anderson v. Kijakazi*, 2021 WL 4146300, at *7 (M.D. Fla. Sept. 13, 2021) ("A review of the record establishes that the ALJ properly considered Plaintiff's obesity . . . [in holding] that Plaintiff could never climb ramps, stairs, ladders, ropes, or scaffolds and could only occasionally balance, stoop, kneel, crouch, and crawl."); *Combs v. Comm., Soc. Sec. Admin.*, 2022 WL 875021, at *9 (N.D. Ala. Mar. 23, 2022) (same).

For these reasons, the court concludes that substantial evidence supports the RFC finding and that the ALJ adequately considered the combined effects of Croft's impairments consistent with SSR 19-2p.

### 2. *SSR 96-8p*

Croft next argues that the RFC violates SSR 96-8p because the ALJ did not consider her ability to perform sustained work activities. Doc. 16 at 22–23. The court disagrees.

An ALJ's RFC finding "must include a narrative discussion describing how the evidence supports the ALJ's conclusion, citing specific medical facts and nonmedical evidence and discussing the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Stowe v. Soc. Sec. Admin., Comm.*, 2021 WL 2912477, at *7 (11th Cir. July 12, 2021) (citing SSR 96-8p). The ALJ should also (1) explain how he resolved "material inconsistencies or ambiguities" in the record, and (2) "include a discussion of why

16

reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted." SSR 96-8p.

The ALJ complied with SSR 96-8p's requirements.  He discussed in narrative form the record evidence and explained how the evidence supported his RFC assessment. R. 17–24.  In this discussion, the ALJ cited specific medical facts, including treatment notes, examinations, and the opinions of treating physicians and state-agency consultants. R. 18–24.  The ALJ also discussed nonmedical evidence, such as Croft's hearing testimony and reported daily activities, as well as the evidence from Croft's mother. R. 18 & 23.  During the discussion of these medical records and opinions, the ALJ explained how he resolved inconsistencies in the record. R. 17–24.  Finally, in evaluating the medical opinions, the ALJ explained how the medical records correspond with the limitations in the RFC. R. 21–24.  The court therefore finds that the ALJ adequately addressed Croft's performance of sustained work activities in an ordinary workday despite her limitations.

### 3.    Croft's Other RFC Arguments

The remainder of Croft's RFC arguments are not persuasive since they essentially ask the court to re-weigh the evidence before the ALJ.  The court will not accept this invitation.  As explained above, the role of a reviewing court under 42 U.S.C. § 405(g) is limited to a determination of whether there is substantial evidence in the record as a whole to support the decision.  The court "may not decide the facts

17

anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," and it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles*, 84 F.3d at 1400 (internal quotation marks omitted). As long as the ALJ's decision is supported by substantial evidence and based upon correct application of the law, as it is in this case, it is entitled to deference and should be affirmed. *See Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

**B.    Appeals Council**

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm.*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). "If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant." *Hargress v. Soc. Sec. Admin., Comm.*, 883 F.3d 1302, 1309 (11th Cir. 2018). "Evidence is material if a reasonable probability exists that the evidence would change the administrative result." *Id.*  New evidence is chronologically relevant if it "relates to the period on or before the date of the hearing decision." 20 C.F.R. § 404.970(a)(5).  Whether the evidence meets the new, material, and chronologically relevant standard is a question of law subject to *de novo* review. *Washington*, 806

18

F.3d at 1321.  The Appeals Council commits reversible error when it improperly refuses to consider such evidence. *Id*.

Here, the Appeals Council did not err when it denied review.  First, the ongoing treatment records do not relate to the period on or before the date of the hearing decision even if they do address some of the same complaints Croft made during the relevant period.  These records do not contain opinions about Croft's work-related functioning or add anything to what was already before the ALJ in the record.  In this way, they are cumulative of the treatment records before the ALJ, and therefore there is no reasonable probability that this evidence would change the outcome of the administrative result. *See Hargress*, 883 F.3d at 1309; 20 C.F.R. § 416.1470(a)(5); *Sanders v. Soc. Sec. Admin., Comm.*, 854 F. App'x 311, 315 (11th Cir. 2021) ("Because these records were cumulative of evidence already considered by the ALJ, substantial evidence supports the Appeals Council's determination that no 'reasonable probability' existed that the additional evidence would change the outcome.").

As for Dr. Herrerra's examination notes and opinions, the court agrees with the Appeals Council that they were not chronologically relevant.  Dr. Herrerra examined Croft four months after the ALJ's decision.  Nowhere in his notes or opinions did he discuss his findings in relation to the period on or before the date of the ALJ's decision, as required for chronological relevance. *See* 20 C.F.R.

19

§ 404.970(a)(5).  Instead, Dr. Herrerra merely listed the records he reviewed (R. 95) and stated that these documents "include[] the chronological summary of her medical issues and interventions in the past." R. 92.   Other than this cursory statement, Dr. Herrerra did not discuss or even indicate how those records support his findings. *See Ring v. Soc. Sec. Admin*, 728 F. App'x 966, 969 (11th Cir. 2018) (finding no chronological relevance because physician did not "discuss his findings in relation to [claimant's] earlier medical records, and his evaluation does not appear to be based on that material").

Even if Dr. Hererra's examination and opinions are chronologically relevant, they were not material because there is no reasonable probability that they would have changed the outcome of the decision.[3]   First, the physical capacities form provides no substantive explanation for any opinions.  Instead, Dr. Herrerra checked boxes, circled responses, or filled in blanks without explaining his answers. R. 96.  Opinions of this type are conclusory and have limited probative value. Indeed, several courts have criticized "form reports" like these, where a physician merely checks off a list of symptoms without providing an explanation of the evidence that

---

[3] Croft claims that the court cannot consider materiality since the Appeals Council did not base its decision on this requirement. Doc. 16 at 27–28 n.3.  This argument ignores the court's *de novo* review of the Appeals Council's decision. *See Smith v. Soc. Sec. Admin., Comm.*, 2023 WL 6938521, at *9 (11th Cir. Oct. 20, 2023) (considering materiality although the Appeals Council did not address it); *Hargress*, 883 F.3d at 1310 (concluding that the evidence submitted to the Appeals Council was immaterial despite the Appeals Council finding only that the evidence was not chronologically relevant); *Washington*, 806 F.3d at 1321.

20

supports his decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (noting that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.").

In addition, Dr. Herrerra's opinions on the physical capacities form and mental health source statement stand in stark contrast to his own examination and the record.  Dr. Herrerra is a general practitioner and does not appear to have any training in the field of mental health, undercutting the probative value of the mental health statement.  And there are no examination findings or explanations for his extensive mental health limitations.  The checked boxes, circled responses, and limited answers provide no meaningful support for the opinions.  As for Croft's physical condition, the only remarkable findings Dr. Herrerra noted on examination were tenderness to palpation of the lumber region, diminished grip strength, and

21

limping gait. R 93.  Yet he opined without explanation that she would miss 23 days of work in a 30-day period due to her physical symptoms and would be off-task more than 35% of the workday. R. 96.  These extreme physical limitations are inconsistent with the other medical evidence in the record. *See Hargress*, 883 F.3d at 1310 (stating that where evidence submitted to the Appeals Council contradicts other records that the ALJ found more credible, the new evidence is not material and the Appeals Council does not need to consider it).  In sum, the Appeals Council did not err when it declined review.

### IV.  CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Therefore, the decision of the Commissioner is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on August 5, 2026.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE